**FILED**

OCT - 6 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Ron Nichols                           }
1620 Fuller Street NW                 }      CASE NUMBER   1:05CV01978
Washington, DC 20009                  }
                                      }      JUDGE: James Robertson
        V.                            }
Sport & Health Clubs, Inc.            }      DECK TYPE: Employment Discrimination
1800 Old Meadow Road                  }
Mc Lean, VA 22102                     }      DATE STAMP: 10/06/2005
                                      }



### COMPLAINT AND REQUEST FOR JURY TRIAL

Along comes Plaintiff requesting this Court grant Plaintiff a jury trial in this Complaint of Discrimination & Retaliation, and that Honorable Court approve Plaintiff's request to proceed *in forma pauperis* in this matter.

### JURISDICTION AND VENUE

Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over this lawsuit.

Plaintiff files this complaint to remedy allegations of discrimination on the basis of being a black male in the United States of America, and to remedy retaliation against an employee for activity protected under Title VII, all in violation Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 et, seq., including Age Discrimination in Employment Act (ADEA) for declaratory relief, damages and other appropriate legal and equitable relief as sought pursuant to 42 U.S.C. § 2000e.

Pursuant to 28 U.S.C. § 1367, this Court also has supplemental jurisdiction over Plaintiff's local District of Columbia claims as these claims are so related to the Plaintiff's federal law claims as to form part of the same case or controversy.

Pursuant to rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff requests trial by jury in this action.

RECEIVED

SEP 2 6 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

Plaintiff contacted the Distict of Columbia's Human Rights Office [DC's OHR] as early as April 2001, to complaint about this matter, but could not get [OHR] to process & finalize Plaintiff's complaint until June 4, 2001. OHR then kept Plaintiff's complaint in house till January 2005. Plaintiff had no control over OHR processing until OHR released complaint.

## BACKGROUND

The particulars of this case begin around/about May 2000, when Fred Schefler [white male] an accountant associate of Defendant's General Manager[white male] at Defendant's Washington Hilton Sport & Health Club called Plaintiff "nigger" and assaulted Plaintiff. Plaintiff performing his shift-related-duties requested white-male patron to limit use of FD curtousy-telephone during peak traffic time. Whereupon, white-male patron became hostile [calling Plaintiff "nigger"], advanced toward, and pushed Plaintiff.

White patron's behavior shocked Plaintiff. Plaintiff said nothing & retreated as much as possible from white patron's assault. Subsequently, Plaintiff reported this assault to Metropolitan Police Department [MPD], which arrested Mr. Schefler on May 21, 2000 at Defendant's Washington Hilton Sport & Health Club.

Defendant's GM blamed Plaintiff for white patron's behavior, and took disciplinary action against Plaintiff. Defendant's Sr. Vice President partly reversed GM's discipline & offered to meet Plaintiff later to disscuss reversal of GM's sanctions. However, SR. VP never followed thru to consummate proposed meeting with Plaintiff. From this time forward, Plaintiff experienced various forms of slights, challenges, and outright harrassment from Defendant.

Plaintiff began with Defendant as a part-time Front Desk[FD] clerk. FD stands responsible for maintaining good order & overall client convenience in club, as well as, collecting & processing club charge/sale receipts during duty shift. Subsequently, Plaintiff

2

became FD clerk/Manager on Duty [MOD]. Plaintiff worked for Defendant from July 1997, to Plaintiff's firing, December 2004. In August, 2002, Defendant demoted and constructively discharged Plaintiff, reducing Plaintiff's work hours, take home pay, and authority, while transferring Plaintiff to an alternate work location, that Defendant knew would close in near future. Plaintiff thus became a truncated FD person, until Defendant closed alternate site on/about December 31, 2002, releasing Plaintiff.

On or about April/May 2001, Defendant did not consider Plaintiff for position of Assistant Manager of Washington Hilton site at the departure of black female, 26, Cicily Blackman, who vacated same position. Defendant had knowledge that Plaintiff was interested in Assistant Manager position, and that Plaintiff was clearly more qualified than the person selected [Asian female in her 20's, w/o prior industry experience]. This was second position & instance of advancement left by Ms. Blackman, for which, Defendant did not consider Plaintiff.

To Plainiff's knowledge, Defendant released [fired] no one from either location (i. e., Hilton &/or Watergate clubs) who had been with Defendant's company as long as Plaintiff had.

Defendant obsessed with behavior of black males as evidenced by Defendant's generating and displaying of theft posters. Defendant disciplined Plaintiff for performing his job duties in an even-handed-manner. The Defendant's actions herein decribed were reoccuring and on going, causing the discrimminary treatment of Plaintiff.

### FACTUAL ALLEGATIONS

1) In the summer of 1997, Defendant's General Manager [GM], Mr. John Moore, hiered Plaintiff at his location, the Washington Hilton Sport & Health Club. There came a time, when Mr. Moore left this club and Defendant replaced Mr. Moore with a New GM, Mr. Carlo DellaMea. Plaintiff affirms that Defendant's new replacement Manager began to subject Plaintiff to disparte treatment in

3

May 2000, after New Manager's associate & personal accountant called Plaintiff "nigger" and assaulted Plaintiff. Upon complaining to New Manager, Mr. DellaMea made no effort to discipline or expel his associate from facility.

2) Defendant's Assistant Manager (black, female, 26) had arranged for Plaintiff to take about five management cources at Defendant's Corporate Office. These cources Ms. Blackman had taken, when she transitioned from Front Desk Supervisor to Assistant Manager. Defendant's new GM after the above mentioned "Nigger" incident removed Plaintiff from all cources except the Manager on Duty [MOD] course and prevented Plaintiff from registering and taking additional cources for advancement at later date. During the same time, new GM failed to give Plaintiff commission credit for Plaintiff's membership sales and refused to allow Plaintiff to serve as MOD.

3) Defendant's Sr. Vice President, Ms. Pam Curran, reversed Mr. DellaMea's sales credit prohibition. Defendant's GM still subjected Plaintiff to hostile work environment in an attempt to get Plaintiff to quit his job. When any employee worked as MOD, that employee had usually another FD and/or Housekeeping working in conjunction with MOD. Mr. DellaMea began increasingly to excuse these other employees off from Plaintiff's MOD shift. If a new FD person was needed during Plaintiff's MOD shift, Mr. DellaMea [Defendant] would not hire a replacement. In effect, Plaintiff as MOD was just another FD person working alone, sometimes one person working in a three person situation.

4) When Assistant Manager (black, female, 26) transferred to another facility in April 2001, Plaintiff expressed Plaintiff's interest in this vacant position to New Manager. New Manager continually told Plaintiff, GM would not get a new Assistant Manager, but that GM would assume both positions. Plaintiff further contends that Defendant did not post an advertisement for this vacancy or other

4

indication that Defendant sought a replacement Assistant Manager. Plaintiff spoke continually to GM about this open position. Nevertheless, in late April 2001, Defendant hired a replacement Assistant Manager (Asian, female, 20's). Defendant knew that this newly hired employee did not have the work experience that Plaintiff had and that this was her first job with the Defendant.

5) In March 2001, Defendant's, Fitness Director (Asian, male, 30's), Tom Cong hired by new GM assaulted Plaintiff, bending back Plaintiff's fingers and hand, causing Plaintiff pain and Plaintiff to go to hospital. Defendant's Fitness Director then left a threatening message on the voicemail of Plaintiff's home telephone. Defendant's Fitness Director would interfere with Plaintiff's work & responsiblities by leaning across Plaintiff's tiny work desk station, climb on Plaintiff trying to access cash & credit receipts, which Plaintiff's FD job description allocated to the resonsibility of the FD. A number of times, Plaintiff called Assistant Manager, Ms. Blackman (black, female, 26), to complain about Fitness Director in this regard. Plaintiff furthermore complained to GM, Carlo DellaMea (white, male, 20's). Plaintiff worried that because of Tom Cong's unprofessional conduct & interference in Plaintiff's charged duties, Defendant could hold Plaintiff culpable for any lost or discrepancy in FD finances.

6) Defendant discriminated and retaliated against Plaintiff in February 2002 when Defendant passed over Plaintiff for the Above and Beyond Award and the Employee of the Year Award. Defendant customarily presented these awards by December every year. Defendant withdrew and delayed granting of these awards to give a similarly situated, newly hired young white male, in his 20's seven months time in grade to be eligble by award rules to win. In August 2002, Defendant transferred Plaintiff to another facility, Watergate Sport & Health

5

Club, which Defendant knew wold subsquently close. This move on the part of Plaintiff was involuntary.

7) Defendant's GM's hiring records at Hilton facility favored young persons mostly females (in 20's), not people like Plaintiff. Before Ms. Blackman's departure, she and Plaintiff had brought this female favoritism up to GM in conversation.

8) With Plaintiff's involuntary transfer to Defendant'sWatergate in August 2002, Defendant reduced Plaintiff's total take home pay/work hours, and cut completely Plaintiff's access to sales commission. A similarly situated black, female, 20's did not suffer such a pay diminution.

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Plaintiff alleges that when Defendant persecuted and discriminated against Plaintiff, Defendant breached Defendant's duty of care to Plaintiff to act as competant and reasonable managers or supervisors and to prevent unlawful conduct in the workplace. When Defendant failed to take any affirmative steps to rectify the discrimination, Defendant also breached a duty of care owed Plaintiff to provide a safe and productive workplace, free from discrimination, harassment, and retaliation.

As a result of the respective Defendant's actions, omissions, failures, and/or breaches of the duties of care owed to Plaintiff, Plaintiff sustained significant emotional harm. Moreover, the emotional harm Plaintiff sustained was of a kind and extent normally expected to occur in any reasonable person subjected to the same unlawwfully discriminatory and hostile workplace as that of Plaintiff.

As the Defendant's negligence directly and proximately caused significant emotioal harm to Plaintiff, the Defendant is liable for committing the tort of negligent infliction of emotional distress under local Distict of Columbia law, and Plaintiff is now entitle to recover for that emotional trauma, on an amount to be determined at trial.

6

## PRAYER FOR RELIEF

WHEREUPON, Plaintiff respectfully prays for judgement and damages against Defendant.

Although Plaintiff may have not exhausted his administrative remedy normally required before Plaintiff can add new aalegations to this lawsuit, there are continued allegations of discrimination and retaliatory conduct, that have been committed by Defendant, that are like or reasonably related to the allegations referenced herein & originally raised. Plaintiff prays also to bring such allegations/conduct before This Honorable Court by Rule 15 &/or other appropriate submission.

Plaintiff further prays This Court, Enjoin the Defendant from failing or refusing to:

Provide sufficient remedial relief to make Plaintiff whole for loss Plaintiff has suffered as alleged in this complaint,

Take other appropriate nondiscriminatory meaures to overcome the effects of Defendant's discrimination against black males/aged.

Award compensatory damages to Plaintiff to fully compensate Plaintiff forinjuries caused by Defendant's conduct within the statutory limitations of availble Laws.

Award such relief as justice may require, together with Plaintiff's costs and disbursments in this action.

## JURY DEMAND

Plaintiff hereby requests a trial by jury of all issues triable pursuant to Rule 38 of the Federal Rules of Civil Procedure and § 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

## CERTIFICATE OF SERVICE

I CERTIFY that on September 26, 2005, I filed an originally signed Complaint, as well as an originally signed Application with This Court to proceed in FORMA PAUPERIS.

/s/   Ron Nichols, pro se

1620 Fuller Street NW
Washington, DC 20009

Attachment: EEOC Right to Sue Notice, dated June 30, 2005

*Ron Nichols*

EEOC Form 161 (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

To: Ron Nichols
1620 Fuller Street, N.W.
Apt. 402
Washington, DC 20009

From: Washington Field Office
1801 L Street, N.W.
Suite 100
Washington, DC 20507

[ ] On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR § 1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 10C-2001-00106 | David Gonzalez, State & Local Coordinator | (202) 419-0714 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

[ ] Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ] While reasonable efforts were made to locate you, we were not able to do so.

[ ] You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

[ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[X] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this Notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

On behalf of the Commission

_Dana R Hutter_
Dana Hutter,
Director

JUN 3 0 2005

**FILED** (Date Mailed)

OCT - 6 2005

05 1978

Enclosure(s)

cc:
SPORT & HEALTH, INC.
1800 Old Meadow Road
Mc Lean, VA 22102

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT