RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

2005 NOV 29 PM 4:36

NANCY M. MAYER-WHITTINGTON CLERK

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**Ron Nichols, *pro se***
**1620 Fuller Street NW**
**Washington, DC 20009**

**V.**

**Sport & Health Clubs, Inc.**
**1800 Old Meadow Road**
**Mc Lean, VA 22102**

**CASE NUMBER: 1:05CV01978 JR**

**POINTS AND AUTHORITIES OPPOSSING DEFENDANT' MOTION TO DISMISS**

Plaintiff comes before this Court upon defendants' motion to dismiss dated October 28, 2005. On September 26, 2005 *pro se* plaintiff initiated this employment discrimination suit, alleging that the defendants, Sport & Health Clubs, Inc., ("S&H") discriminated and retaliated against him unlawfully by race, black, & sex, male, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e seq. ("Title VII") including Age Discrimination in Employment Act (ADEA) for declaratory relief, damages and other appropriate legal and equitable relief as sought pursuant 42 U.S.C. § 2000e. Plaintiff, furthermore, pled for Supplemental Jurisdiction by this Court pursuant to 28 U.S.C. § 1367 over plaintiff's local District of Columbia's claims as these claims are so related to the plaintiff's federal law claims as to form a part of the same case or controversy.

Defendant, who is not racialy black, makes light of concept of a white male invectively calling a black male "nigger" while assaulting said black male, as if we are back in the days of salvery. Such an act is a manifest imbalance. Moreover, plaintif charges defendant with this imbalance of attitude coupled with on-going discriminatory treatment directed to him by

RECEIVED
NOV 29 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

defendant. In defendant's Motion to Dismiss, respectively pages 1 and 5, defendant asserts two grounds for dismissal: (I) Plaintif has failed to set forth a Prima Facie case of Negligent Infliction of Emotional Distress, and: (II) Plaintiff's complaint fails to satisfy the liberal requirements of Rule 12(b)(6). In respect and reply to defendant's *(I) Plaintif has failed to set forth a Prima Facie case ...* , plaintiff bears the burden of persuasion to establish subject matter jurisdiction by a preponderance of the evidence. "Pitney Bowes, Inc. v. United States Postal Serv., 27 F.Supp. 2d 15, 19 (D.D.C. 1998). Rulings on jurisdictional facts which are inexticably intertwineed with merits of case should be deferred until merits are heard. (974 F.2d 192). Though trial court may rule on disputed jurisdictional facts at any time, if these facts intertwine inextricably with the merits of the case it [Honorable Court] should ...defer its jurisdictioal decision until the merits are heard. See Land, 330 U.S. at 731, 67 S.Ct. at 1009. A ruling on a Rule 12(b)(1) motion maybe improper before plaintiff has had a chance to discover the facts necessary to establish jurisdiction. *Collins v. New York Central System*, 327 F.2d 880 (D.C.Cir.1963). Plaintiff preys this Court allow that plaintiff's evidence come later in this process of litigation.

*(II) Plaintiff 's complaint fails to satify the ... requirements of Rule 12(b)(6).*

The Court must accept as true, See, Dennis R. Worth v. Alphonso Jackson No. 02-1576 Civ. Mem. Opin. Filed February 23, 2005 (D.D.C. 2002), all the factual allegations contained in the complaint, Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (193). Without trial, the defendant contends and acts, as there are no genuine issues for Jury to hear. In reply to defendant's main points respectively headlined in Motion to Dismiss, pages 1 and 5: Under Rule 12(b)(1), See, Dennis R. Worth v. Alphonso Jackson. No. 02-1576 Civ. Mem. Opin. Filed February 23, 2005 (D.D.C. 2002), it is well established in this Circuit that a court is not limited to the allegations in the complaint, but may also consider material outside of the pleadings in its effort to determine whether the court has jurisdiction in the case. See EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624-25 n.3 (D.C. Cir. 1997);

Herbert v. Nat'l Academy of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992); Hasse v. Sessions, 835 F.2d 902 (D.C. Cir. 1987); Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F.Supp. 2d 9,14 (D.D.C. 2001), when reviewing and denying a Defendant's Motion to Dismiss; See Andrew H. Fowler v. District of Columbia, et al.

For clarification and discussion within this Opposition to Dismiss Motion, plaintiff restates *[BACKGROUND, FACTUAL ALLEGATIONS, & NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS]* from his original complaint the following numbered paragraphs as required by Rule 10.

BACKGROUND

(1) The particulars of this case begin around/about May 2000, when Fred Schefler [white male] an accountant associate of Defendant's General Manager[white male] at Defendant's Washington Hilton Sport & Health Club called Plaintiff "nigger" and assaulted Plaintiff. Plaintiff performing his shift-related-duties requested white-male patron to limit use of FD curtousy-telephone during peak traffic time. Whereupon, white-male patron became hostile [calling Plaintiff "nigger"], advanced toward, and pushed Plaintiff.

(2) White patron's behavior shocked Plaintiff. Plaintiff said nothing & retreated as much as possible from white patron's assault. Subsequently, Plaintiff reported this assault to Metropolitan Police Department [MPD], which arrested Mr. Schefler on May 21, 2000 at Defendant's Washington Hilton Sport & Health Club.

(3) Defendant's GM blamed Plaintiff for white patron's behavior, and took disciplinary action against Plaintiff. Defendant's Sr. Vice President partly reversed GM's discipline & offered to meet Plaintiff later to disscuss reversal of GM's sanctions. However, SR. VP never

offered to meet Plaintiff later to disscuss reversal of GM's sanctions. However, SR. VP never followed thru to consummate proposed meeting with Plaintiff. From this time forward, Plaintiff experienced various forms of slights, challenges, and outright harrassment from Defendant.

(4) Plaintiff began with Defendant as a part-time Front Desk [FD] clerk. FD stands responsible for maintaining good order & overall client convenience in club, as well as, collecting & processing club charge/sale receipts during duty shift. Subsequently, Plaintiff became FD clerk/Manager on Duty [MOD]. Plaintiff worked for Defendant from July 1997, to Plaintiff's firing, December 2004. In August, 2002, Defendant demoted and constructively discharged Plaintiff, reducing Plaintiff's work hours, take home pay, and authority, while transferring Plaintiff to an alternate work location, that Defendant knew would close in near future. Plaintiff thus became a truncated FD person, until Defendant closed alternate site on/about December 31, 2002, releasing Plaintiff.

(5) On or about April/May 2001, Defendant did not consider Plaintiff for position of Assistant Manager of Washington Hilton site at the departure of black female, 26, Cicily Blackman, who vacated same position. Defendant had knowledge that Plaintiff was interested in Assistant Manager position, and that Plaintiff was clearly more qualified than the person selected [Asian female in her 20's, w/o prior industry experience]. This was second position & instance of advancement left by Ms. Blackman, for which, Defendant did not consider Plaintiff.

(6) To Plainiff's knowledge, Defendant released [fired] no one from either location (i. e., reoccuring and on going, causing the discrimminary treatment of Plaintiff. Hilton &/or Watergate clubs) who had been with Defendant's company as long as Plaintiff had.

(7) Defendant obsessed with behavior of black males as evidenced by Defendant's generating and displaying of theft posters. Defendant disciplined Plaintiff for performing his job

[1] Mr. Schefler was not put out Hilton Sport & Health on plaintiff's account, but only after Mr. Schefler disturbed sme whites in the Hilton swimming pool, months later. Until that time plaintiff had to see Mr. Schefler almost daily. no apology given plaintiff.

duties in an even-handed-manner. The Defendant's actions herein decribed were reoccuring and on going, causing the discrimminary treatment and stress of Plaintiff.

FACTUAL ALLEGATIONS

1) In the summer of 1997, Defendant's General Manager [GM], Mr. John Moore, hiered Plaintiff at his location, the Washington Hilton Sport & Health Club. There came a time, when Mr. Moore left this club and Defendant replaced Mr. Moore with a New GM, Mr. Carlo DellaMea. Plaintiff affirms that Defendant's new replacement Manager began to subject Plaintiff to disparte treatment in May 2000, after New Manager's associate & personal accountant called Plaintiff "nigger" and assaulted Plaintiff. Upon complaining to New Manager, Mr. DellaMea made no effort to discipline or expel his associate from facility.

2) Defendant's Assistant Manager (black, female, 26) had arranged for Plaintiff to take about five management cources at Defendant's Corporate Office. These cources Ms. Blackman had taken, when she transitioned from Front Desk Supervisor to Assistant Manager. Defendant's new GM after the above mentioned "Nigger" incident removed Plaintiff from all cources except the Manager on Duty [MOD] course and prevented Plaintiff from registering and taking additional cources for advancement at later date. During the same time, new GM failed to give Plaintiff commission credit for Plaintiff's membership sales and refused to allow Plaintiff to serve as MOD.

3) Defendant's Sr. Vice President, Ms. Pam Curran, reversed Mr. DellaMea's sales credit prohibition. Defendant's GM still subjected Plaintiff to hostile work environment in an attempt to get Plaintiff to quit his job. When any employee worked as MOD, that employee had usually another FD and/or Housekeeping working in conjunction with MOD. Mr. DellaMea began increasingly to excuse these other employees off from Plaintiff's MOD shift. If a new FD person was needed during Plaintiff's MOD shift, Mr. DellaMea [Defendant] would not hire a

replacement. In effect, Plaintiff as MOD was just another FD person working alone, sometimes one person working in a three person situation.

4) When Assistant Manager (black, female, 26) transferred to another facility in April 2001, Plaintiff expressed Plaintiff's interest in this vacant position to New Manager. New Manager continually told Plaintiff, GM would not get a new Assistant Manager, but that GM would assume both positions. Plaintiff further contends that Defendant did not post an advertisement for this vacancy or other indication that Defendant sought a replacement Assistant Manager. Plaintiff spoke continually to GM about this open position. Nevertheless, in late April 2001, Defendant hired a replacement Assistant Manager (Asian, female, 20's). Defendant knew that this newly hired employee did not have the work experience that Plaintiff had and that this was her first job with the Defendant.

5) In March 2001, Defendant's, Fitness Director (Asian, male, 30's), Tom Cong hired by new GM assaulted Plaintiff, bending back Plaintiff's fingers and hand, causing Plaintiff pain and Plaintiff to go to hospital. Defendant's Fitness Director then left a threatening message on the voicemail of Plaintiff's home telephone. Defendant's Fitness Director would interfere with Plaintiff's work & responsiblities by leaning across Plaintiff's tiny work desk station, climb on Plaintiff trying to access cash & credit receipts, which Plaintiff's FD job description allocated to the resonsibility of the FD. A number of times, Plaintiff called Assistant Manager, Ms. Blackman (black, female, 26), to complain about Fitness Director in this regard. Plaintiff furthermore complained to GM, Carlo DellaMea (white, male, 20's). Plaintiff worried that because of Tom Cong's unprofessional conduct & interference in Plaintiff's charged duties, Defendant could hold Plaintiff culpable for any lost or discrepancy in FD finances.

6) Defendant discriminated and retaliated against Plaintiff in February 2002 when Defendant passed over Plaintiff for the Above and Beyond Award and the Employee of the Year Award. Defendant customarily presented these awards by December every year. Defendant withdrew and delayed granting of these awards to give a similarly situated, newly hired young white male, in his 20's seven months time in grade to be eligble by award rules to win. In August 2002, Defendant transferred Plaintiff to another facility, Watergate Sport & Health Club, which Defendant knew wold subsequently close. This move on the part of Plaintiff was involuntary.

7) Defendant's GM's hiring records at Hilton facility favored young persons mostly females (in 20's), not people like Plaintiff. Before Ms. Blackman's departure, she and Plaintiff had brought this female favoritism up to GM in conversation.

8) With Plaintiff's involuntary transfer to Defendant'sWatergate in August 2002, Defendant reduced Plaintiff's total take home pay/work hours, and cut completely Plaintiff's access to sales commission. A similarly situated black, female, 20's did not suffer such a pay diminution.

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

(1) Plaintiff alleges that when Defendant persecuted and discriminated against Plaintiff, Defendant breached Defendant's duty of care to Plaintiff to act as competant and reasonable managers or supervisors and to prevent unlawful conduct in the workplace. When Defendant failed to take any affirmative steps to rectify the discrimination, Defendant also breached a duty of care owed Plaintiff to provide a safe and productive workplace, free from discrimination, harassment, and retaliation.

(2) As a result of the respective Defendant's actions, omissions, failures, and/or breaches of the duties of care owed to Plaintiff, Plaintiff sustained significant emotional harm. Moreover, the emotional harm Plaintiff sustained was of a kind and extent normally expected to occur in any reasonable person subjected to the same unlawwfully discriminatory and hostile workplace as that of Plaintiff.

(3) As the Defendant's negligence directly and proximately caused significant emotional harm to Plaintiff, the Defendant is liable for committing the tort of negligent infliction of emotional distress under local Distict of Columbia law, and Plaintiff is now entitle to recover for that emotional trauma, on an amount to be determined at trial.

Plaintiff incorporates as if realleged the following numbered Paragraphs into plaintiff's Opposition to Defendant's Motion to Dismiss.

As required by Rule 10 of Federal Rules of Civil Procedure, Plaintiff incorporates from plaintiff's complaint, plaintiff's BACKGROUND statements now numbered one (1) to six (6). Plaintiff likewise numbers plaintiff's Factual Allegations from one (1) to three (3).

Plaintiff requests this Court include BACKGROUND statements as Factual Allegations, as Plaintiff had originally intended these statements to be factual.

Plaintiff incorporates as if realleged the following numbered Paragraphs into plaintiff's Opposition to Defendant's Motion to Dismiss.

Plaintiff in this Opposition to Defendant's Motion to Dismiss incorporates the following statements as additional Factual Allegations numbers (4) & (5):

(4) Plaintiff's duties required plaintiff to serve as defendant's main money receiver & handler during plaintiffs Front Desk assignments. Plaintiff thus was under added stress of handling monies of defendant because of fear of physical attacks and harassment perpatrated by defendants agents and special patrons, which include but were not limited to Messer's Tom Cong and Fred Sheller [Pls. see original complaint BACKGROUND statements (1), (2), (3), (4), (5), (6) & (7)].

(4) Furthermore, plaintiff felt on-going pressure from defendant, resulting in fear that plaintiff should treat whites & Asians more favorably than blacks.

The defendant's emotional abuse of plaintiff was repititious and on-going. Plaintif preys that this Court not dismiss plaintiff's claims. Plaintiff claims relief under local District of Columbia code as found in *William v. Baker, 572 a.2d 1062, 1067 (D.C. 1990) & Jones lv. Howard Univ., Inc. 589 A.2d 419, 424 (D.C. 1991).*

Ron Vick[?], pro se

ORDERED

Plaintiff preys this Court not dismiss plaintriff's claim of Negligent Infliction of Emotional Stress.

As required by this Court, Plaintiff in support thereof submits his Points and Authorities Opposing Defendant's Motion to Dismiss.

CERTIFICATE OF SERVICE

I CERTIFY that on November 29, 2005 a true copy of the foregoing POINTS AND AUTHORITIES OPPOSING DEFENDANT MOTION TO DISMISS was mailed by first class mail, postage prepaid, to Philip M. Keating (DC Bar No. 384726), BEAN, KINNEY& KORMAN, P.C., 2000 N. 14th Street, Suite 100, Arlington, VA 22201.

/s/ Ron Nichols, pro se

1620 Fuller Street NW, #402
Washington, DC 20009

Ron Nichols pro se