RECEIVED
MAY - 9 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Ron Nichols, *pro se*            }
1620 Fuller Street NW            }
Washington, DC 20009             }
                                 }   CASE NUMBER: 1:05CV01978 JR
            V.                   }
Sport & Health Clubs, Inc.       }
1800 Old Meadow Road             }
Mc Lean, VA 22102                }
                                 }

PLAINTIFF'S OPPOSITION TO DEFENDANT'S SUMMARY JUDGEMENT

In *defendant's exhibit 3*, dated 8-11-02, defendant claims to offer plaintiff a transfer to the Watergate club with same pay and number of hours. In reality the defendant's pay records to plaintiff don't bear out defendant's claim. *Defendant's exhibit #3/ plaintiff's exhibit # 1 @ Summary of Meeting with Ron Nichols* (Dan Burns, white male) claims, "...Mr. Nichols was offered a transfer to the Watergate club with same pay and number of hours." Plaintiff disagrees with defendant's characterization & accounts contained in *defendant's exhibit #3*.

Plaintiff's own pay check copies *(see plaintiff's exhibit # 2 @ Earning Statements, dated 1/3/02 to 12/27/02, 26 pages)* show, in September 2002 a drastic reduction in pay and work hours from defendant. Even with this September 2002 pay reduction, defendant paid plaintiff $8,261.69. For the total year 2003, defendant paid plaintiff $3741.48 *see plaintiff's exhibit # 3 @ Wage & Tax Statements 2003, 2004.* For 2004, defendant paid plaintiff $3495, *see plaintiff's exhibit # 3 @ Wage & Tax Statements 2003, 2004.* Defendant reduced plaintiff's total pay by more than 50%.

1

After defendant transferred plaintiff to defendant's Watergate club, defendant never again permitted plaintiff to act as Manager On Duty [MOD]. Defendant would not allow plaintiff to receive & thus earn paid commission for selling defendant's club memberships as plaintiff earned at Hilton. Yet, defendant authorized younger (under 40 yrs. age) similarly situated male & female colleagues with less senority at both defendant's Hilton & Watergate to act as MOD's.

Defendant at Watergate forced plaintiff to have prospective members fill out initial sales information materials and then pass these papers on to plaintiff's colleages, who then received credit & paid sales commission, when clients consumated the deal. Clearly, the same pay and hours defendant promised didn't add up to those delivered. Take it or leave it!--defendant stated to plaintiff upon plaintiff discovering defendant's slight, *see plaintiff's exhibit #___4___@ R. Nichols to Paul Barnedo (Asian male, under 40), dated August 12, 2002.* Defendant kept plaintiff in low orbit holding pattern as if defendant expected Watergate facility to close &/or plaintiff to quit, whichever came first. The Watergate [WG] facility was in jeopordy for years due to spectulation, lawsuits, and WG resident resitance, *see plaintiff's exhibits #___5___.@ Washington Post, June 8, 2004, "WatergateResidents Clash Over Co-Ops" WASHTECH--section E, p. E5.*

The reduction in pay, hours, & work status made by defendant can not be considered accidental. Defendant calculated well plaintiff's pay/work circumstances *see plaintiff's exhibit #___6___@ Hours for Ron Nichols, Paul Barnedo (Hispanic Asian male) to Dan Burns, cc: Pam Curran (white female), dated 08/09/02.*

Plaintiff contacted the District of Columbia's Human Rights Office [DC's OHR] as early as April 2001 to complain about plaintiff's work treatment. Plaintiff could not get OHR to

2

process & finalize Plaintiff's complaint until 6-4-01.   Plaintiff had no control over OHR processing until OHR released Plaintiff's complaint in January 2005.

Before plaintiff filed claims of discrimmination/retaliation, defendant recognized and valued plaintiff's work contribution, *see plaintiff's exhibit #___7___ @ Sport & Health Connection dated 2001, also see plaintiff's exhibit #___8___ @ Above & Beyond Employee Recognition Program—2000 award to Ron Nichols.*   Plaintiff received the same award that defendant gave Paul Barnedo.  Defendant later promoted Mr. Barnedo to club manager & to plaintiff's supervisor.

After defendant became aware of plaintiff's filing of offical claims of discrimination, defendant began to misrepresent plaintiff's performance & plaintiff's duties to club clientele/others, *see plaintiff's exhibit #___9a___ @ Subject: Front Desk Policy, memo from R. Nichols to Paul Barnedo/Kiri Kirshchner (Asian female), cc: to Dan Burns, dated 9-12-01 +, plaintiff's exhibit #___9b___ @ draft letter to Cary Chavis (white male); & also, see plaintiff's exhibits #_____ & #_____ ATTENTION ALL TENNIS MEMBERS /TENNIS COURT RULES.*

To see another incident falling into category of defense's setup directed at plaintiff, *see plaintiff's exhibits #___12___ @ Subject: CONTINUING REPRISAL/RETILIATION/HARASSMENT FOR HAVING FILED A COMPLAINT OF DISCRIMMINATION, from R. Nichols, [S/H] Front Desk [FD] THROUGH: Paul Barnedo, Washington Hilton [S/H] Manager, TO: Dan Burns, Sport and Health Club [S/H], Bethesda, Maryland 20814.*

Plaintiff answered any situation that required reasoning for performing his duties according to established & written work rules/procedures.   However, defendant sought to sabatoge & defeat plaintiff's correct performance.   Plaintiff had additional guides by which to

3

perform: *see plaintiff's exhibit #* **13** *@ (defendants) Standards for a Manager on Duty Shift; see plaintiff's exhibit #* **14** *@ (Front Desk) Duties and Responsibilities; & see plaintiff's exhibit #* **15** *@ HILTON FRONT DESK OPERATIONS, dated 9-22-97.*

Defendant held manager Carlo DellaMea (white male) blameless for the misdeeds & misconduct of Mr. DellaMea's personal accountant, Fred Schefler (white male, who, calling plaintiff *nigger*, assaulted plaintiff). Then why did defendant blame MOD plaintiff (black male) for carrying out plaintiff's arm's length duties in respect to the unidentified/misbehaving Chris Bilski (white male)?

Initially, the only parties directly present at the Chris Bilski, episode were, Chris Bilski, and the plaintiff in his capacity as Manager On Duty [MOD]. Later, after Mr. Bilski became threatening and hostile toward MOD plaintiff. Plaintiff summoned Mr. Jordan (black male) of Hilton security.[1] <u>MOD plaintiff needed to make determination about Mr. Bilski's presence in men's membership locker area</u>, *see plaintiff's exhibit #* **16** *@ Montgomery County Police Wanted Poster about R.Brockingto (black male)*[2], *subject known to frequent fitness clubs, where he steals from clients lockers.* Plaintiff knows that if defendant believes that black males are suspected of stealing/theft from club locker rooms, it may be possible that other males, including white ones could also bear checking out. In fact, plaintiff had observed other white males engaged in misconduct. As an example, plaintiff observed/caught a white male misrepresenting himself with defendant's [Sport & Health] membership card [to which the intruder was not entitled to], *see plaintiff's exhibit #* **17** *@ IMPERSONATION & ATTEMPTED THEFT OF SERVICE INCIDENT, dated 5-27-02.* Ergo, not to be pressured by defendant to look only at

---

[1] At the Hilton, Sport & Health Club [SH] [defendant] did not have a directly paid or inclusive security department. SH thus used Hilton security.
[2] *Please note the quality recognizable detail of Sport & Health's [defendant's] presentation of black male subject. The only clear aspect of this poster is that the figure is black.*

4

black males, plaintiff performed plaintiff's duties/procedures at/in arms length/nondiscriminatory manner.

Chris Bilski could not establish that he was a club member, or, that he had a valid pass to be in the club. Mr. Bilski first claimed club membership. Following several checks, plaintiff could not verify status of Chris Bilski to be in club's locker area, noted as a place for theft and false entry. Instead of cooperating, so MOD plaintiff could identify Chris Bilski and arrive at a determination, Mr. Bilski ran interference, attempting to impress & distract plaintiff.[3]  MOD plaintiff found that Mr. Bilski was not a member of club, & was not registered as a guest of the Hilton Hotel.[4] Plaintiff found behavior of Chris Bilski, uncooperative, threatening, and hostile. In accordance with club procedures, plaintiff contacted Mr. Jordan of Hilton security.

The weekend the Biliski incident occurred, (a) <u>defendant provided no heads up notice, that a Chris Bilski would be coming to facility</u>. The defendant could easily notify plaintiff of any pending & unusal occurance, *see plaintiff's exhibit #* __18__ *@ Complementary Memberships, from Paul Barnedo to: FrontDesk Staff, dated 07/19/02*; (b) that a Mr. Bilski had become a member [as Chris Bilski first claimed on the spot][<u>all & especially new members</u> are suppose to carry ID cards to present upon demand]; nor (c) that Mr. Bilski had a pass/permission to use the facility, *see plaintiff's exhibit #* __19__ *@ Guest Pass/Temporary Card(s) spelling out <u>NO EXCEPTIONS</u>*; (d) nor did the Hilton post an alert/notice, that Chris Bilski would be coming to the club [The Hilton could and did provide notice of indiviuduals who would otherwise prompt attention or require additional assistance to enter the club, *see plaintiff's exhibit #* __20__ *@ WIP Group-Wyeth-Ayerst Research, from: Cheryl Haydel – Meetings & Conventions to : Carlos*

---

[3] Mr. Bilski proclaimed himself a high-powered lawyer/negotiator (from NYC?).
[4] It was not usual for Hilton Hotel to give special notice to defendant for guests of hotel, *see plaintiff's exhibit #*_____ *@*. Chris Bilski this date was not a registered guest and Hilton gave no notice of Mr. Bilski's coming.

5

*(sic) Dellamea – Sport & HealthClub, dated 6/8/01; see, plaintiff's exhibit # 21 @ Complimentary Sports and Health Usage for the MERCK Group, notice to: Sport & Health Mgmt & Staff, Jeffrey G. Chirinos, Assistant Director of Meetings and Conventions, cc: Jenifer Roberts, Sales Mgr., dated 07/19/02]; also see, plaintiff's exhibit # 22 @ Subject: Times When We Earn Our Pay, from R. Nichols to Paul Barnedo, dated November 25, 2001 {7:25}* Furthermore, defendant had no problem providing similarly situated (white male) Jesse Parkes weekend notice & work directions, *see, plaintiff's exhibit # 23 @ Saturday 6/22/02 Updates, To: Jesse Parkes, From: Paul Barnedo.*

MOD plaintiff repeatedly checked papers, querried CPU files, to no avail. Chris Bilski insisted that MOD plaintiff give Mr. Bilski (5) five passes so that Mr. Bilski could forget about this incident. However, MOD plaintiff had not been able to complete his identification of Mr. Bilski, who at that point was still an unknown.

With Chris Bilski yelling and disrepecting Mr. Nichols, MOD plaintiff walked away leaving Chris Bilski with Mr. Jordan. <u>MOD plaintiff did not ask that Mr. Bilski leave club, which plaintiff could in light of the total situation</u>. MOD plaintiff could not reward Mr. Bilski with club passes for his beligerance & acting out, when Mr. Bilski would not let plaintiff complete his identification procedure check.

Plaintiff exercised his duties in a comprehensive and thorough manner, because the setup & layout of club required the utmost in alertness and preparation for contingency, see memos attached showing actual events leading to possible undesirable & actual outcomes. Weekend/evening work, times with fewer personnel on site, required special alertness, *see*

6

plaintiff's exhibit # **24** @ *Miscellaneous Children Enter Rear Gym Door, from: Ron, Front Desk [FD] to: Carlo/Kiri/Front Desk, dated July 22, 2001.*[5]

In spite of acute vigilance, intruders slip through, *see plaintiff's exhibit #* **25** @ *"How Would You Like to Pay for That," from R. Nichols, Manager on Duty [MOD] Notes, dated April 22, 2002, to: Paul Barnedo, Hilton Sport & Health Club [SH] Manager; & see plaintiff's exhibit #* **26** @ *Subject: March 22, 2002 incident with S/H Intruder (w. attachment), dated: Monday, April 15, 2002; also, see plaintiff's exhibit #* **27** @ *Subject: ATTEMPTED THEFT OF SERVICE INCIDENTS, R. Nichols, Manager on Duty [MOD] Notes, dated June 26, 2002, to: Paul Barnedo, Hilton Sport & Health Club [SH] Manager.*

The Chris Bilski incident occurred the weekend of 7-12-02. The plaintiff's concern for identification of club entrants was not confined to the Hilton. Plaintiff used the same procedure/approach plaintiff learned/used at defendant's Hilton club at Watergate, *see plaintiff's exhibit #* **28** *@Stephen M., dated 1-30-03*[6].

By the attached memos & alert notices, Sport & Health Club (defendant) had tendency to concentrate on unknown blacks, who entered club, *see plaintiff's exhibit #* **29** @ *Washington, Maryland, & Virginia Sport & Health Clubs; plaintiff's exhibit #* **30** @ *METROPOLITAN POLICE DEPARTMENT BARRING NOTICE; plaintiff's exhibit #* **31** @ *Wanted for Sexual Assault, and plaintiff's exhibit #* **32** *@ Member #400939, Joseph*

---

[5] Health clubs located within hotels, such as The Watergate and Hilton hold special vulnerablities, due to political and diplomatic clientele, whose protection require added alertness.

[6] Health clubs located within hotels, such as The Watergate and Hilton hold special vulnerablities, due to political and diplomatic clientele, whose protection require added alertness.

*Blachford.*  Chris Bilski was/is not black.  Chris Bilski is seen in different light by defendant & defendant's associates than blacks, known and unknown.

Defendant provided extra training courses quickly to Jesse Parker, while dfefendant having delayed/ceased same opportunity to Plaintiff *(secrets held by defendant but witnessed by plaintiff)*.  Defendant manipulated employee performance awards to favor white employees.  Where plaintiff had to work more than 2 years to get Above & Beyond Award, defendant just delayed award presentation mark in order to give young white male Jesse Parkes the Employee of the Year Award [EOYA], *see plaintiff's exhibit # **33** @ pictured showing Defendant's Hilton club manager, Paul Barnedo presenting Jesse Parkes, Employee of Year.*  Jesse Parkes had not the time in employment (seven (7) months) when customary award time came *see plaintiff's exhibit # **34** @ Ron Nichols, Manager [MOD] Note to Paul Barnedo, Hilton Sport & Health Club [SH], dated March 1, 2002.*  Defendant delayed employee award giving period in order to make Jesse Parker eligible in employee-time & grade for award.  Defendant postponed the customary point of time permit to Mr. Parkes to receive EOY.  The EOY also carries a monitary component.  The EOY was then presented after Jesse past his 7 month tenure mark.

---

### Interaction with Defendant's Fitness Director

Tom Cong's claim of procedure for storage of personal belongings is a fanasy.  Plaintiff worked in defendant's facility for approximately two years before defendant's Tom Cong arrived at the Hilton work scence. Each club has its own idiosyncrasy and disposition according to layout.personnel, & history.  Tom Cong came to defendant's Hilton club two (2) years after plaintiff, Ron Nichols.  There were no procedures other than those that plaintiff had adhered to commonly in respect to placement of plaintiff's belongings.  Plaintiff when performing his FRONT DESK [FD] duties worked in a central space of was 30"x5'; 30"x 49" (within ten feet) of

8

a well traveled club entrance door opening out to 19th Street NW. Not a location to leave personal belongings unattended, *see plaintiff's exhibit #_____ @ Impersonation & Attempted theft of Service Incident, dated 5-27-02.* In fact, when leaving FD area to make a check of the rounds and/or attend to a client, plaintiff locked up/secured defendant's cash/valuables to the extent possible. Moreover, Tom seemed jeolous of plaintiff's ability & educational standing (plaintiff holds, MA, MBA & PhD, while Tom had a graduate degree).

On 5-26-02 @ 4:35PM, Tong Cong and employee (black male)Ali Mohammed had a dispute to the point that Ali left club. Part of dispute involved Ali arriving late to work. Tom told Ali to leave. Before Ali's abrupt departure, Tom followed Ali around the club hasseling/abusing Ali in front of white member Michael Armstrong. Mr. Armstrong was in club for his Sunday afternoon physical therapy appointment with Tom. Michael Armstrong laughed at Ali, and Tom looked to Mr. Armstrong as if for his approval and amusement. Other clientele, coming & going, became distracted by Tom and Ali. This chastisement interfered with plaintiff's FD work on the phone and in person. Plaintiff asked Tom to move away from FD because Tom was chastising Ali so loudly. Defendants GM Paul Bernado becme aware (thru plaintiff & others) of this disturbance with Tom and Ali. Ali left defendant's club after 20 minutes in shame. To plaintiff's knowledge defendant did nothing to either Tom or Ali.

9

Tom Cong put his single graduate degree upon the wall of the main office. Plaintiff had three graduate degrees, MA, MBA, & a PhD. Plaintiff decided to expertly pursue his duties & not to crow about plaintiff's educational background [or hang plaintiff's graduate degrees on the wall]. Tom had a tendedncy to treat black males in derisive manner, *see Sunday5-26-02 example with Mohamed Ali, above stated.* When Tom learned plainifff had respect of club clientele, & out stripped Tom in educational background, Tom treated plaintiff in resentful manner as well. Plaintiff always used the closet in question to store his light work jacket.

*[handwritten: Under penalty of perjury the foregoing is true to the best of purse plaintiff's knowledge]*

Respectfully submitted,

Signed/ _____ /Date 5-9-06
Ron Nichols, *pro se*

*[handwritten: Pro Se Plaintiff does not agree or stipulate to defendant's accusations, in defendant's submissions.]*

### CERTIFICATE OF SERVICE

*[handwritten: Plaintiff's Opposition to Defendant's Summary Judgement]*

I hereby certifiy that Plaintiff mailed a true copy of the foregoing Leo S. Fisher (DC Bar No. 322065) Philip M. Keating (DC Bar No. 384726) 2000 N. 14th Street, Suite 100; Arlington, VA 22201; (703) 525-4000, (703) 525-2207 (facsimile), Counsel for Sport & Health Clubs, Inc. on this 9th day of May, 2006.

_____ /Date 5-9-06
Ron Nichols