UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Ron Nichols, *pro se*

V.

Sport & Health Clubs, Inc.

CASE NUMBER: 1:05CV01978 JR

6/12/06 leave to file granted [signature] USDJ

<u>*PRO SE* PLAINTIFF'S MEMORANDUM IN REPLY TO DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

1. *Pro se* plaintiff filed his Opposition to Defendant's Motion for Summary Judgement on May 9, 2006, acting without advice of counsel. *Pro se* plaintiff did not elect to proceed further without benefit of counsel, and *Pro se* plaintiff made his explaination to this Court and Defendant in PLAINTIFF'S REQUEST FOR RECONSIDERATION & REINSTATEMENT OF COURT APPOINTED PRO BONO REPRESENTATION UNDER LCvR 83. 11 filed May 19, 2006.

2. Defendant claims expending considerable expense against *pro se* plaintiff's claims[1] & in effect against, the Rights & Remedies granted to *Pro Se* Plaintiff as a Protected Class under Title VII of the Civil Rights Act of 1964, as amended, 28 & 42 U.S.C § 1367, 1981, 2000 et, seq., including Age Discrimination in Employment Act (ADEA).

3. Since *pro se* plaintiff initated in April, 2000, claims of discrimination, defendant & defendant's counsel have retaliated, constructively discharged, and otherwise sought to villanize,[2] *pro se* plaintiff as their defense from *pro se* plaintiff's claims. <u>*Pro se* plaintiff</u>

---

[1] See DEFENDANT'S OPPOSITION TO PLAINTIFF'S REQUEST FOR RECONSIDERATION, pp, 1-2. Mailed May 26, 2006.
[2] The defensive aspect of villanization is common especially in litigation against black males. In specific, with *Pro Se* plaintiff having more than 60 years in age, defendant appears to accuse plaintiff of attacking

RECEIVED JN - 6 2006
NAYER WHITTINGTON, CLERK
DISTRICT COURT

<u>believes fulfillment of his request for Pro Bono Counsel under LCvR 83. 11. could adequately defeat the evasions & concealments on part of defendant in this complex case.</u> *Pro se* plaintiff does not concede any of pro se plaintiff's claims against defendant.

4. As of June 1, 2006, defendant's counsel has filed a number of court submissons since Court's lifting of Stay. <u>The defendant claims</u> "...The impact of [*Pro Se*] Plaintiff's request on Defendant needs to be assessed. Defendant has expended considerable resources in responding in good faith to Plaintiff's submissions throughout this action and currently with respect to motions for summary judgment."[3] <u>Defendant intimately with defendant's counsel</u> have at least since September 19, 2000, both joined to deny *pro se* plaintiff's claims herein this litigation, *see plaintiff's exhibit #  35  @ EMPLOYMENT DISCRIMINATION AWAERNESS MEETING, MEMORANDUM [5 pages] TO: Club Mangers, [SPORT & HEALTH], FROM: BEAN, KINNEY & KORMAN, PC, 2000 N. 14TH Street Suite 100, Arlington, VA 22201.* It would appear defendant had no need to extend any expense in this dispute but for, and except to deny *pro se* plaintiff & the classes of which plaintiff represents, Rights & Remedies under Title VII of the Civil Rights Act of 1964, as amended, 28 & 42 U.S.C § 1367, 1981, 2000 et, seq., including Age Discrimination in Employment Act (ADEA), & what other Rights and Remedies appropriate---This is a GENUINE MATERIAL ISSUE.

5. <u>Defendant's raising of costs is pretext</u> to deny *pro se* plaintiff & the classes of which plaintiff represents, Rights & Remedies under Title VII of the Civil Rights Act of 1964, as amended, 28 & 42 U.S.C § 1367, 1981, 2000 et, seq., including Age Discrimination in Employment Act (ADEA), & what other Rights and Remedies appropriate.

---

young physical instructor, Tom Cong in his early 30's. *Pro se* plaintiff denies these stereotypic accusations & characterizations.
[3] DEFENDANT'S OPPOSITION TO PLAINTIFF'S REQUEST FOR RECONSIDERATION, pp, 1-2. Mailed May 26, 2006.

6. In specific, "... [*pro se* plaintiff] is a member of a protected class; (2) [*pro se* plaintiff] applied for and was qualified for an availabe position; (3) despite [*pro se* plaintiff's] qualifications; [*pro se* plaintiff] was rejected and (4) either someone filled the position or it remained vacant and the employer continued to seek applicants." *See Holcomb v. Powell, 433 F.3rd at 89.* ---This is a GENUINE MATERIAL ISSUE.

7. In specific, "... that [*pro se* plaintiff] engaged in statutory protected activitiies; (2) that the employer took an adverse personnel action; and (3) that a causal connection existed between the two." *See Brown v. Brody, 199 F.3rd at 42-453, citing Mitchell v. Baldrige, 79 F.2d 80, 84 (D.C. Cir 198).* ---This is a GENUINE MATERIAL ISSUE.

8. <u>Defendant intimately with defendant's counsel</u> have both joined to deny *pro se* plaintiff's claims & protective actives put forth in this litigation, *see plaintiff's exhibit # 35 @ 9-19-00 EMPLOYMENT DISCRIMINATION AWAERNESS MEETING, MEMORANDUM TO: Club Mangers, [SPORT & HEALTH], FROM: BEAN, KINNEY & KORMAN,-[EDAM]*---This is a GENUINE MATERIAL ISSUE. Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 459-60, F.E.P. cases 817, 819 (1975) holds that "42 U.S.C. sec. 1981 provides a federal remedy against discrimination on the basis of race in the private work sector. Section 1981 intends to "proscribe discrimination in the making or enforcement of contracts against or in favor of any race." McDonald v. Santa Fe Trail Transportation Co., 427 U.S. 273, 96 S.Ct. 2574, 12 F.E.P. cases 1585 (1976). Private individuals and organizations can be sued under sec 1981, Runyon v. McCrary, 427 U.S. 160, 168-74 (1976). Also, Sec. 1981 prohibits discrimination based on ancestry or ethnicity. St. Francis College v. Al-Khazaji, 481 U.S. 604 (1987). Likewise, Sec. 101 of the Civil Rights Act of 1991 prohibits intentional discrimination in "the making, performance, modification, and termination of contracts." The joining of defendant and defendant's counsel as represented in the contract or contracts producing the *EMPLOYMENT DISCRIMINATION AWAERNESS MEETING, for: Club Mangers, [SPORT & HEALTH] Memorandum* & the working relationship of

defendant/defendants counsel all have resulted in a discriminatory effect in particular against this *pro se* plaintiff.---This is a GENUINE MATERIAL ISSUE.

9. The style of defendant's opposition is outlined in defendant's memorandum, *EMPLOYMENT DISCRIMINATION AWAERNESS MEETING, for: Club Mangers, [SPORT & HEALTH].* Why hire a number of well-paid lawyers & organize a special treatment policy directed to oppose the Protected Classes & Activities represented by *pro se* plaintiff, rather than give a $7.75 an hour protected class person a raise &/or advancement, if there are NO GENUINE MATERIAL ISSUES? Why the expense unless defendant & defendant's counsel have overwhelming need to evade and avoid detection of defendant's special & adverse treatment of protected classes represented by *pro se* plaintiff? ---This is a GENUINE MATERIAL ISSUE. Defendant's *9-19-00 Employment Discrimination Awareness Meeting* memorandum may on its face be considered defendant's quide to special & adverse treatment for protected classes.

10. Summary judgement against *pro se* plaintiff is without merit in that, defendant holds key witnesses and materials, that have been unavailable to *pro se* plaintiff. Defendant's business records would give this Court & a jury a different picture of defendant's opposition to Protected Classes in general and to this plaintiff in particular. Having access to defendant's busness records & witnesses is a GENUINE MATERIAL ISSUE.

11. As an example, defendant's business records will show that *Pro Se* plaintiff & assistant manager Cicily Blackman were both hired by defendant's same manager, Mr. John Moore. Ms. Blackman worked same position, that of part-time Front Desk [FD] clerk, as *Pro Se* plaintiff. When Carlo DellaMea came to replace John Moore's leaving, *[See pro se plaintiff's exhibit #__36__@ Hilton Memorandum dated 2/6/98, To: ALL DEPARTMENT HEADS, From: Richard J. Frisch, Washington Hilton & Towers, Dept: Executive Office, Subject: SPORT AND HEALTH CLUB.]* many of the FD staff left employment of defendant

at Carlo's coming.  Even Ms. Blackman subsequently left defendant's employ for other work.  *Pro Se* plaintiff did not abandon defendant's employ.

12. Mr. DellaMea's management style seemed wanting or non-existant, which disposition contributed greatly to the staff exodus.  Those unhappy, with defendant's Mr. DellaMea, left.  Mr. DellaMea floundered as FD people came & quickly went.  The number of FD hires rose as well as the number leaving.  In desperation, Carlo got Ms. Blackman to return to defendant's employ with a promotion [*more money & authority*].  Shortly, Carlo further promoted Cicily to assistant manager.

13. Defendant's hire records under Mr. DellaMea will show that most hirees were young females.  During *pro se* plaintiff's work shifts, when a female came to club to fill out an employment application in Mr. DellaMea's absence, Carlo would later inquire, "… is she cute?"

14. Mr. DellaMea's preference was young females in their 20's or younger.  Defendant's business records will bear out Mr. DellaMea's predilection.  *Pro Se* plaintiff is not a young female in her 20's, or under 40 years of age----These (age/gender/race employment practices) are GENUINE MATERIAL ISSUES.

15. Pro Se plaintiff had no qualms about working full time.  *Pro Se* plaintiff had in past worked a greater number of hours, when no one else, manager or staff employee, would work, *see plaintiff's exhibit # 43 @ Letter dated December 11, 2001 from R. Nichols [Pro Se plaintiff] to: Mr. Haydn G. DeMas, [DC] Human Rights Department, 441 4th StreetNW, 570N, Washington, DC 20001; see plaintiff's exhibit # 34 previously submitted  @ Ron Nichols, Manager [MOD] Note to Paul Barnedo, Hilton Sport & Health Club [SH], dated March 1, 2002.*

16. Plaintiff has a genuine material issue in the fact that defendant has denied that plaintiff made known to defendant's management, plaintiff's interest in becoming assistant manager, or working more hours, *see plaintiff's exhibit # 37 @ R. Nichols Manager on Duty [MOD] Notes, To: Paul Barnedo, Hilton Sport & Health Club[S/H], dated January 18, 2002.  Also*

see plaintiff's exhibit # *38* @*Subject: Differential Treatment, To: Carlo DellaMea, Washington Hilton Sport & Health Club [S/H] Manager, From: R. Nichols, Manager on Duty [MOD], Dated: May 29, 2001.*------This is a GENUINE MATERIAL ISSUE.

17. Defendant's counsel protests cost of defendant's defense in this matter, yet counsel has enabled defendant to pursue its discriminatory treatment of Protected Classes, and in particular this *Pro Se* plaintiff through behavior & acts eminating from defendant's *9-19-00 Employment Discrimination Awareness Meeting* memorandum [EDAM]. Defendant's business records along with appropriate testimony would inform jury of *Pro Se* plaintiff's material issues------This is a GENUINE MATERIAL ISSUE. *Pro Se* plaintiff does not have access to defendant's business records pertinent to this litigation.-----This is a GENUINE MATERIAL ISSUE.

18. Defendant's counsel, the authors of *9-19-00 Employment Discrimination Awareness Meeting* memorandum, have had more than 5 years to perfect their evasion & avoidance of *Pro Se* plaintiff's complaints.-----This is a GENUINE MATERIAL ISSUE.

19. A group of people of community peers need to be summon and sworn to decide plaintiff's claims [if possible with plaintiff represented by counsel] through the eyes of an elderly black male versus the evasive renderings of lawyers joined with defendant---This is a GENUINE MATERIAL ISSUE.

20. Defendant & defendant's counsel have withheld from plaintiff easements listed in defendant's EDAM which may have been amiable in solving the material issues put forth by *Pro Se* plaintiff. In respect to defendant's EDAM, page 1, sec. 1A. Prohibied Practices, Disparate Treatment/Adverse Employment Actions rose to level of constructive & final discharge of *Pro Se* plaintiff. *See EDAM*, sec. 1B Protected Practices, wherein defendant engaged in Excessive Monitoring/Discipline of *Pro Se* plaintiff, *see plaintiff's exhibit # 44 @ July 19, 2001 Hilton memorandum listing Ron Nichols Update.*------This is a GENUINE MATERIAL ISSUE.

6

21. Defendant engaged in violation of Protected Practices by reducing responsibility of *Pro Se* plaintiff. At transfer of *Pro Se* plaintiff to Watergate location, defendant would not allow *Pro Se* plaintiff to receive sales credit &/or commission on sales, nor permitt plaintiff to act as MOD. See defendant's EDAM, page 1, sec. 1A, part 1C, Reduced Responsibility.-----This is a GENUINE MATERIAL ISSUE. Pro se plaintiff tried to negotiate for different salariy as defendant refused to hire FD replacements on Pro Se plaintiff's MOD shifts. *Pro Se* plaintiff in effect concurrenly worked the positions of MOD & FD employees due to defendant not hiring/assigning appropriate FD personnel to cover extra work as defendant did for other white/female/non-black MOD's----This is a GENUINE MATERIAL ISSUE. See defendant's EDAM, page 2, sec. 1A, part 1D. *See plaintiff's exhibit # 39 @ MOD Notes for August 19, 2000 resulting in memorandum To: Ron Nichols, From: Carlo DellaMea, dated September 1, 2000.* No such proposed meeting took place contrary to defendant's EDAM, see page 2, sec. 1B, Open Door policy.

22. In respect to defendant's EDAM, see page 4, II, Investigating sec. D, #2. Required written apology from harasser/offender. No apology was forth coming from anyone having knowledge or involvement in the nigger incident with Fred Schefer.

23. To *pro se* plaintiff's observation, Carlo DellaMea & Fred Schefer had a trusted relationship & involvement with each other to the extend that Mr. Schefer rarely spent any time in the gym proper. *Pro Se* plaintiff witnessed nearly every evening of plaintiff's Front Desk shift work, that when Mr. Schefer entered club, he went into defendant's office and spent most of time in club office with or without defendant's manager, Carlo DellaMea. When Mr. Schefer wasn't in office with Carlo, Mr. Schefer went out to pool area &/or used courtesy phone near plaintiff's workstation to drum up accounting/investment business. Until the nigger incident, Pro Se plaintiff did not know Fred Schefer was a member of defendant's club.

24. Defendant's manager, Carlo DelaMea became quite upset at plaintiff's complaint concerning Fred Schefer. Carlo blamed plaintiff for nigger incident. Carlo did not speak to plaintiff for

more than a week after said occurance. Even though Mr. Schefler later departed, Carlo never forgot this incident. This nigger incident carried over in defendant's employ of plaintiff---This is a GENUINE MATERIAL ISSUE.

25. *Pro se* plaintiff had previously complained to Cicily Blackman that, Tom Cong interfered with plaintiff work at the Front Desk. In respect to defendant's delayed employee award given to Jesse Parkes in 2002, -----Why would defendant delay & change nature of employ award & include Tom Cong as part of evaluation/selection group for this possible employee award? This manipulation eliminated *pro se* plaintiff from award consideration Tom Cong's involvement in the evaluation of employee awards & nature of award's change affected *pro se* plaintiff & contributed to defendant's on-going hostile environment in respect to *pro se* plaintiff.---This is a GENUINE MATERIAL ISSUE----- *see plaintiff's exhibit # 40 @ Tom Cong's operaion of the FD, dated March 4, 2001, From: R. Nichols, Front Desk [FD], To: Carlo DellaMea/Cicily Blackman, Hilton Sport & Health Club [S/H] Managers; See plaintiff's exhibit # 41 @ Tom Cong's Retaliation for Memo dated 3-4-01 and delivered to you 3-6-01, From R. Nichols, Front Desk [FD], Date: March 8, 2001, To: Carlo DellaMea/Cicily Blackman, Hilton Sport & Health Club [S/H] Managers; Also, see plaintiff's exhibit # 42 @ Tom Cong's Interference with my Work at the FD, , From R. Nichols, Front Desk [FD], Date: April 22, 2001, To: Carlo DellaMea/Cicily Blackman, Hilton Sport & Health Club [S/H] Managers.*----These are all GENUINE MATERIAL ISSUES.

26. Tom Cong on 5`-26-02 @ 4:35PM caused (black male) Ali Mohammed to leave defendant's work place in shame. Tom pursues black males he doesn't like. Ali Mohammed is an example where Mr. Cong, in company of defendant's member [Michael Armstrong], pursued Ali. This event plaintiff previously described in plaintiff's Motion for Summary Judgment. Tom in the past has called plaintiff's home in an untoward & hostile manner. ---This is a GENUINE MATERIAL ISSUE

My Commission expires Aug. 31, 2006

District of Columbia
Subscribed and sworn to before
me this 6th day of June 2006
Dorothy Pooler
Notary Public

Ron Nich 06-6-06

Respectfully submitted,

Signed/ _____ /Date June 6, 2006
Ron Nichols, *pro se*

### CERTIFICATE OF SERVICE

I hereby certifiy that Plaintiff mailed a true copy of the foregoing *PRO SE* PLAINTIFF'S MEMORANDUM IN REPLY TO DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, to Leo S. Fisher (DC Bar No. 322065) Philip M. Keating (DC Bar No. 384726) 2000 N. 14th Street, Suite 100; Arlington, VA 22201; (703) 525-4000, (703) 525-2207 (facsimile), Counsel for Sport & Health Clubs, Inc. on this 6th day of June, 2006.

6th June 2006

My commission expires Aug. 31, 2006