## Interrogatories for Paul V. Barnedo

*I, Paul V. Barnedo, being duly sworn depose and state the following:*

*I am a person of lawful age and I am competent to testify to matters contained herein. I understand that this interview is being provided in connection with the Complainant's charge of discrimination, and I solemnly swear or affirm that the information provided in this interview is true to the best of my knowledge and belief.*

1. Please answer the following:
   - a.) Your full name:
     *Paul Vincent Barnedo*
   - b.) Your date of birth:
     *July 19, 1975*
   - c.) Your race:
     *Philippino*
   - d.) Any disability you may have:
     *None that would affect my job functions at Sport & Health.*
   - e.) Your date of hire with Sport & Health:
     *Sport & Health hired me on April 2, 1997. However, I began working for the Club located at the Hilton Hotel in July 2001.*
   - f.) Your position with Sport & Health:
     *General Manager*
   - g.) Your end date with Sport & Health:
     *I am a current employee.*

2. When was Mr. Nichols hired?
   *I am not certain of the exact date Mr. Nichols was hired, but the Club employed him before I was transferred to work there.*

3. What was his position when hired?
   *Mr. Nichols was a Front Desk Attendant.*

4. Please describe Mr. Nichols' duties.
   *Generally speaking, Mr. Nichols answered the phones, checked in members and performed transactions. Mr. Nichols is a part-time employee.*

5. Were the same duties required of all other employees who held the same position as Mr. Nichols?
   *Yes, the same duties were required of all other Front Desk Attendants.*

6. Please describe Mr. Nichols' work performance.
   *I would describe Mr. Nichols' work performance as satisfactory.*

7. Please describe the Club's disciplinary policy.
   *Generally speaking, there would first be a verbal warning that is documented in the employee's personnel file, followed by written warnings.*

*Ron Nichols v. Sport & Health, Inc.*
Docket No.: 01-113-P (CN)
Interview Date: Thursday, May 27, 2004
Observed by Respondent's counsel, Mr. Leo Fisher and Mr. Robert Reverski

8. Was Mr. Nichols ever disciplined? If so, how and what for?
   *I did give Mr. Nichols two written warnings for conduct. Both instances involved Mr. Nichols and Front Desk Attendant, Brenda Bailey (African-American/female/38 yrs.). The first occasion consisted of Ms. Bailey, having observed that Mr. Nichols was busy at the front desk, trying to help Mr. Nichols out so that he would not be overwhelmed. Mr. Nichols proceeded to yell at Ms. Bailey stating that she should not try to do his job and to get away from there. The second written warning involved left over transactions from a prior shift. It is common that shifts at the front desk overlap each other so that there will be some leftover transactions from the prior shift for the employee who relieves that shift to finish. This was not new to Mr. Nichols. During this one occasion, Mr. Nichols was left with few transactions from Ms. Bailey's shift and he did not feel that he should compute those transactions. Mr. Nichols has not reacted this way in the past when faced with similar circumstances.*

9. Who else has been disciplined for the same infractions as Mr. Nichols?
   *During the time I was General Manager at the Club, no other employee was disciplined to my knowledge.*

10. Please describe your working relationship with Mr. Nichols.
    *Our working relationship was difficult at times. Mr. Nichols displayed some unnecessary conduct, as described in the incidents involving Ms. Bailey.*

11. Please explain the Club's application procedures.
    *Generally speaking, employees who are interested in a promotion would see a supervisor and express interest in the position they would like to be promoted to. If the employees performed well and management felt that they would be a good fit for the position, management would refer them to our Human Resources department.*

12. When did Mr. Nichols apply for any other positions?
    *Mr. Nichols did not apply for any other positions nor did he make me aware that he would like to be promoted to a different position.*

13. When and why did the Club discontinue offering its management courses to employees?
    *The management courses were discontinued company-wide for a period of time. However, they are currently being offered. I am not certain as to why they were initially discontinued.*

14. Who was allowed to receive sales commissions during the 2001 time period?
    *The employees receiving sales commissions during this time were the Assistant Manager, Mr. Nichols and myself.*

15. Please describe the selection criteria for the Club's "Employee of the Year" award.
    *The award is generally based on employee performance and member feedback. An employee must be employed by the Club for a minimum of six months before being eligible to be considered for the award. Management votes on who is to receive the award. Mr. Nichols did not receive an "Employee of the Year" award during my tenure at the Hilton Club. I am familiar with employee, Jesse Parks. Mr. Parks did receive an "Employee of the Year" award. However, it is not correct to say that management held*

Ron Nichols v. Sport & Health, Inc.
Docket No.: 01-113-P (CN)
Interview Date: Thursday, May 27, 2004
Observed by Respondent's counsel, Mr. Leo Fisher and Mr. Robert Reverski

*off on voting on who was to receive the award in order to wait for Mr. Parks to fulfill his sixth month as an employee at the Club.*

16. Please describe the incident involving Mr. Nichols and member, Carry Chavis.
    *I cannot recall such an incident.*

17. Please describe the incident involving Mr. Nichols and member, Chris Bilski.
    *The member name does sound familiar, but I cannot recall the incident at this time.*

18. Please explain why Mr. Nichols was transferred.
    *Mr. Nichols was transferred to the Watergate Hotel Club because of the performance issues that had occurred with Ms. Bailey, as well as issues that had arisen during his tenure prior to my becoming General Manager of the Club. I am not certain as to the specifics of those issues. The Club's Regional Manager, Dan Burns (Caucasian/mid-30's) is the individual who made the decision to transfer Mr. Nichols to the Club at the Watergate. I had made Mr. Burns aware of the written warnings I had issued Mr. Nichols at the time of issuance. I was not involved in the actual meeting between Mr. Burns and Mr. Nichols concerning Mr. Nichols' transfer. To my knowledge, Mr. Nichols was transferred to a bilateral position that received the same pay rate and hours. I do not know of any other employee who was transferred during my tenure with the Hilton.*

19. When and by who were you informed that Mr. Nichols had filed a discrimination complaint with the D.C. Office of Human Rights?
    *Mr. Burns made me aware that Mr. Nichols had filed a discrimination complaint with the D.C. Office of Human Rights upon the commencement of my employment as General Manager at the Hilton, though I was not informed of the specifics. I have no knowledge on whether other employees have filed discrimination complaints against the Club.*

I, _Paul Barnedo_, having read the above, state that the responses contained herein are true and correct to the best of my knowledge and belief.

_Paul Barnedo_
Paul V. Barnedo

8/31/04
Date

3