UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RON NICHOLS,                          :
                                      :
        Plaintiff,              :
                                      :
v.                                    :      Civil Action No. 05-1978 (JR)
                                      :
SPORT & HEALTH CLUBS, INC.,           :
                                      :
        Defendant.              :

MEMORANDUM OPINION AND ORDER

In this employment discrimination action filed *pro se*, plaintiff alleges that defendant discriminated against him on the basis of race and age and retaliated against him following an incident in May 2000.[1] Defendant seeks summary judgment, asserting that plaintiff has not stated a *prima facie* case and has not refuted its legitimate non-discriminatory reasons for the challenged actions. Defendant's motion will be granted in part and denied in part and plaintiff's cross motion for summary judgment will be denied.[2]

---

[1] The claims are brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.*

[2] Plaintiff's summary judgment motion is not accompanied by a separate statement of material facts as to which he contends there is no genuine issue. Local Civil Rule 7(h). Following the withdrawal of appointed counsel on May 1, 2006, the Court permitted plaintiff's private counsel 30 days in which to submit additional or supplemental briefing. Dkt. No. 39, Order (July 19, 2006). Counsel has not supplemented the record. The Court has little choice but to consider plaintiff's collective *pro se* responses, Dkt. Nos. 23, 24, 25, 34, 35, as his opposition to the pending motion.

## I.  BACKGROUND

Plaintiff worked part time for defendant, a health and fitness club, from July 1997 to December 2004 as a front desk clerk and, at times, as a "manager on duty" one day a week. Compl. at 3; Def.'s Answer ¶ 12.  In May 2000, a club patron called plaintiff a "nigger" when he asked the patron to restrict his use of a courtesy telephone.  Compl. at 2; Answer ¶ 8.  Defendant terminated the patron's membership by letter of July 31, 2000.  Def.'s Ex. 2.  In August 2002, defendant transferred plaintiff from the Hilton Hotel club to the Watergate club "after several recent service issues involving members and guests at the Hilton Hotel club and the calling of security."  Def.'s Ex. 3.  The Watergate club closed the end of December 2004 due to termination of the lease, leaving plaintiff without a job.

## II.  DISCUSSION

Summary judgment is to be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In ruling on a motion for summary judgment, the court must draw all reasonable inferences in the nonmoving party's favor and accept the evidence of the nonmoving party as true.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, in proffering evidence to defeat a motion for summary judgment, the nonmoving party cannot simply rely on conclusory statements or allegations.  *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).  Rather, the nonmoving party must come forward with specific facts that, when viewed in the context of the record as a whole, could lead a rational jury to find for that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

1. *Plaintiff''s Prima Facie Case of Discrimination and Retaliation*

Plaintiff's discrimination and retaliation claims are based on his work site transfer, defendant's failure to recognize him with awards, and defendant's failure to promote plaintiff to an assistant manager position.

1. <u>The Discrimination Claim</u>

Plaintiff presents no direct evidence that defendant discriminated against him because of his race or age. In the absence of direct evidence, the Court turns to the framework set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). It is the plaintiff's initial burden in a Title VII action to establish a *prima facie* case of discrimination by a preponderance of the evidence. *Id.*, 411 U.S. at 802; *Stella v. Mineta*, 284 F.3d 135, 144 (D.C. Cir. 2002). A plaintiff constructs a *prima facie* case of employment discrimination "by establishing that: '(1) [he] is a member of a protected class; (2) [he] suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.'" *Stella,* 284 F.3d at 145 (quoting *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999)). If a plaintiff succeeds in making out a *prima facie* case of discrimination, the burden shifts to the defendant to rebut the presumption of discrimination by producing "evidence that the adverse employment actions were taken for a legitimate, nondiscriminatory reason." *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1289 (D.C. Cir. 1998) (citation omitted); *see Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). At this point, the presumption of discrimination generated by the *prima facie* showing drops from the case. To survive a summary judgment motion, plaintiff must set forth evidence from which a reasonable jury could find that race and age, not defendant's proffered reasons, were the true reason for the adverse employment action. *See Burdine*, 450 U.S. at 254-55; *Dunaway v. Int'l Bhd. of Teamsters*, 310 F.3d 758, 761 (D.C. Cir. 2002). Plaintiff may rely on "evidence

establishing [his] prima facie case . . . evidence [he] presents to attack the employer's proffered explanation for its actions [] and [] any further evidence of discrimination that may be available to [him], such as independent evidence of discriminatory statements or attitudes on the part of the employer." *Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006).

    Defendant contends that the discrimination charge fails because plaintiff has not shown that he suffered an adverse employment action, which is defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1999). Plaintiff does not allege a significant change resulting from his being "passed over . . . for the Above and Beyond Award and the Employee of the Year Award" in 2002. Compl. at 5. And, he does not refute defendant's claim that his job title, duties and rate of pay remained the same upon his transfer from the Hilton facility to the Watergate facility. Def.'s Statement of Material Facts ¶ 6. Plaintiff documents, however, that his earnings declined "by more than 50%" when he went to the Watergate facility allegedly because defendant did not allow him to earn commissions by selling club memberships, as he had done at the Hilton. Pl.'s Amended Motion for Summary Judgment [Dkt. No. 25] at 2.

    Plaintiff's evidence of reduced earnings establishes the transfer as an adverse employment action. Defendant avers generally that "there is no indication or evidence that [it] ever declined to pay to [plaintiff] a sales commission to which he was entitled or that he did not receive any membership sales credit due." Aff. of Jill Brown [Dkt. No. 18, Ex. 5]. This, however, does not rebut plaintiff's claim that defendant impeded his opportunity to earn commissions. The claim nonetheless fails because plaintiff has not alleged any facts from which

4

a reasonable jury may infer that the challenged action was motivated by discriminatory animus.[3] Nor has he rebutted defendant's "legitimate, non-discriminatory, job related reasons" for the transfer. Def.'s Facts ¶ 5; Ex. 3.

A genuine issue of material fact is presented on the failure to promote claim. In stating a claim based on the failure to promote, plaintiff must allege that "(1) [he] is a member of a protected class; (2) [he] applied for and was qualified for an available position; (3) despite [his] qualifications, [he] was rejected; and (4) either someone filled the position or it remained vacant and the employer continued to seek applicants." *Holcomb*, 433 F.3d at 895.

Assistant Manager Cicily S. Blackman transferred from the Hilton location to another location in April 2001. Plaintiff alleges that he expressed his interest in filling Blackman's former position to the "New Manager" and "spoke continually to [the General Manager] about this open position." Compl. at 4-5. He further alleges that the position was never advertised but was eventually filled by an Asian female in her "20's," who had less work experience than plaintiff. *Id*. at 5. Citing to Blackman's interrogatories and the interrogatories of Paul V. Barnedo, defendant asserts that plaintiff neither applied to be an assistant manager, a full-time position, nor expressed an interest in moving from a part-time position to a full-time position. Def.'s Facts ¶¶ 8-10 (citing Exs. 8, 9). Blackman and Barnedo are competent only to testify that plaintiff did not apply for or express an interest in other positions during their respective tenures.

---

[3] Plaintiff alleges that defendant "never again permitted [him] to act as Manager on Duty [MOD] . . . yet [it] authorized younger . . . similarly situated male and female colleagues with less senority [sic] . . . to act as MODs" at the Hilton and Watergate locations. Dkt. No. 25 at 2. Plaintiff has not suggested that this decision affected his pay or substantially changed his employment status. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000) (ADEA requirements).

Blackman states that requests for promotions or job transfers were made to "the Club's General Manager." Ex. 9, Interrog. 11. *See also* Interrogatories for Tom Cong [Def.'s Ex. 7] ¶ 7 (attesting to a similar procedure). In a sur-reply, plaintiff proffers a memorandum dated May 29, 2001, from him to then-manager Carlo DellaMea in which he concludes: "You also informed me you were not going to fill the Assistant Manager slot whenever I expressed my interest in promotion and in that position." Dkt. No. 35, Pl.'s Ex. 38. Defendant has not rebutted this document with a sworn statement from DellaMea. Summary judgment for defendant on the failure to promote claim therefore is not warranted.

    2. The Retaliation Claim

To establish a *prima facie* case of retaliation, plaintiff must show that (1) he engaged in activity protected by Section 704(a) of Title VII, (2) he suffered a materially adverse action as a result, and (3) a causal link exists between the adverse action and the protected activity. *Burlington Northern and Santa Fe Ry. Co. v. White*, ___ U.S. ___, 126 S. Ct. 2405, 2415-16 (2006). The allocation of the burden of proof for retaliation claims is virtually the same as that for discrimination claims. *See Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d 1395, 1423 (D.C. Cir. 1988); *Mitchell v. Baldridge*, 759 F.2d 80, 86 (D.C. Cir. 1985).

The first requirement is satisfied because plaintiff "contacted the District of Columbia's Human Rights Office . . . as early as April 2001 to complain about [his] work treatment," Dkt. No. 25 at 3, and defendant was aware of the charge in July 2001. *See* Interrogatories for Paul V. Barnedo [Dkt. No. 18, Ex. 8]. Plaintiff's claim fails on the causation requirement. Causation may be established by showing that "the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity." *Mitchell*, 759 F.2d at 86. "Temporal proximity is often found sufficient to establish the requisite causal

connection" for retaliation claims. *Gleklen v. Democratic Congressional Campaign Committee, Inc.,* 199 F.3d 1365, 1368 (D.C. Cir. 2000); s*ee Clark County School District v. Breeden*, 532 U.S. 268, 273 (2001) (citing with approval cases "uniformly hold[ing] that [] temporal proximity must be 'very close,'" and finding that "[a]ction taken . . . 20 months [after the protected activity suggests, by itself, no causality at all."). Plaintiff's transfer occurred more than a year after the charges were filed because of "recent service issues" surrounding plaintiff's job performance at the Hilton facility.[4] "[C]ourts generally have accepted [as a causally sufficient] time [,] periods of a few days up to a few months and seldom have accepted time lapses outside of a year in length." *Davis v. Ashcroft*, 355 F. Supp.2d 330, 352 (D.D.C. 2005) (quoting *Brodetski v. Duffey*, 141 F. Supp.2d 35, 43 (D.D.C. 2001)).

2. *Plaintiff Has Not Stated a Prima Facie Case of Constructive Discharge*

Plaintiff characterizes the August 2002 transfer as a demotion and constructive discharge because defendant knew that the facility would be closed "in the near future." Compl. at 3. A resignation is actionable as a constructive discharge when "the working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 130 (2004); accord *Mugin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1558 (D.C. Cir. 1997) (finding of constructive discharge requires that "the employer deliberately made working conditions intolerable and drove the employee out."). This test requires "an aggravated case of ... a hostile working environment ." *Suders*, 542 U.S. at 131. In other words, there must be "aggravating factors" forcing the employee to leave even beyond the existence of discrimination before a finding can be made of

---

[4] Plaintiff has not presented any evidence to rebut defendant's legitimate, non-retaliatory reason for the transfer.

constructive discharge. *Dashnaw v. Pena*, 12 F.3d 1112, 1115 (D.C. Cir. 1994). Plaintiff does not allege that he resigned or otherwise left of his own accord. He therefore has not stated a constructive discharge claim.

        3. *Plaintiff Has Not Stated a Prima Facie Case of Hostile Work Environment*

Plaintiff alleges that following the 2000 incident, he "experienced various forms of slights, challenges, and outright harassment from Defendant." Compl. at 2. In addition to failing to promote him, plaintiff claims that defendant removed him from four of five management courses he was scheduled to take, "prevented [him] from registering and taking additional courses for advancement at later date . . .and refused to allow [him] to serve as [Manager on Duty]." *Id*. at 4. He alleges further that General Manager Carlo DellaMea subjected him to a hostile work environment by forcing him to perform the work of three people when he was the Manager on Duty, i*d*. at 4, and that an Asian fitness director DellaMea hired, Tom Cong, "assaulted Plaintiff [by] bending back [his fingers and hand, causing [him] pain" to the point of seeking treatment at the hospital and generally interfered "with Plaintiff's work & responsibilities." *Id*. at 5.

Determining whether a work environment is sufficiently hostile to support a Title VII claim requires an examination of "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002). In conducting this analysis, the Supreme Court has emphasized that Title VII is not a "general civility code" meant to protect employees from "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, [protected class]-related jokes, and occasional teasing."

*Faragher v. Boca Raton*, 524 U.S. 775, 787-88 (1998). Rather, a workplace becomes "hostile" for Title VII purposes only when it is "permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of the victim's employment. . . ." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81-82 (1998).

Plaintiff's unsworn allegations do not rise to the foregoing level of workplace hostility. Moreover, there no evidence in the record from which a reasonable jury could conclude that the challenged behavior (the failure to promote excepted) was "motivated by discriminatory animus." *Barbour v. Browner*, 181 F.3d 1342, 1347-48 (D.C. Cir. 1999) (internal citations omitted).

Accordingly, it is

ORDERED that defendant's motion for summary judgment [Dkt. No. 18] is GRANTED in part and DENIED in part; it is

FURTHER ORDERED that plaintiff's cross motions for summary judgment [Dkt. Nos. 24, 25] are DENIED; and it is

FURTHER ORDERED that the parties shall confer pursuant to LCvR 16.3 on the failure to promote claim and appear for a scheduling conference on February 23, 2007 at 4:30 p.m.[5]

JAMES ROBERTSON
United States District Judge

---

[5] Should plaintiff prevail on this claim, his recovery would likely be limited to the difference in salary between that of his part-time position and that of the assistant manager position for the period of April 2001 to August 2002. Thus, the parties are urged to discuss settlement before the conference date. *See* LCvR 16.3(c)(5).